ORDERED in the Southern District of Florida on *April 10, 2008*



John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

**DANIEL TAYLOR,**

    Debtor.
_____/

**SONEET R. KAPILA,**

    Plaintiff,

vs.

**UNITED STATES OF AMERICA,**

    Defendant.
_____/

Case No. 07-10405-BKC-JKO

Chapter 7

Adv. Proc. No. 07-1644-JKO

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DE 16] AND DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT [DE 23]

This adversary proceeding came before me for hearing on January 30, 2008 on Sonnet R. Kapila's (the "Trustee") Motion for Summary Judgment (the "Motion") [DE 16] and on the United States of America's (the "Defendant") Cross Motion for Summary Judgment (the "Cross Motion")

[DE 23]. This case presents the narrow legal question as to whether an insolvent taxpayer's election of an irrevocable waiver of a net operating loss carryback under the Internal Revenue Code, made within a year prior to the filing of his bankruptcy petition and which creates a future benefit for the taxpayer, can be avoidable under the Bankruptcy Code as a fraudulent transfer under 11 U.S.C. § 548 and recovered in accordance with 11 U.S.C. § 550(a) for the benefit of the estate. I conclude that such an election does constitute a fraudulent transfer and that it may be avoided by the Trustee notwithstanding the purportedly irrevocable nature of the election under the tax code.

## JURISDICTION AND VENUE

This is an adversary proceeding seeking to avoid and recover a fraudulent transfer pursuant to 11 U.S.C. §§548 and 550. I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1) and § 157(b)(2)(H). Venue of this proceeding is properly before the Court pursuant to 28 U.S.C. § 1409.

## FACTS

### 1. Procedural history

Daniel E. Taylor (the "Debtor") filed his voluntary Chapter 7 petition on January 22, 2007. *See* [DE 1] in the main bankruptcy case. This adversary proceeding was commenced on August 31, 2008. In it, the Trustee in the Debtor's bankruptcy case asserts that Debtor's election to waive his net operating loss ("NOL") carryback under the Internal Revenue Code constitutes a fraudulent transfer that he may avoidable under 11 U.S.C. § 548(a). *See* Complaint [DE 1]. The Trustee's Motion for summary judgment [DE 16] was filed on December 20, 2007 and the Government's Cross Motion [DE 23] and Reply in Opposition to the Motion (the "Reply in Opposition") [DE 24] were filed on January 9, 2008. On January 23, 2008, the Trustee filed a response to the Cross

Motion (the "Trustee's Response"). See [DE 28]. On January 30, 2008, the Court conducted oral arguments on the Motion and Cross Motion.

## 2. Findings of fact

Debtor purchased a sign manufacturing franchise, Sign-A-Rama, in 2000 through Lula Corporation ("Lula"), an S-Corporation[1] of which he was sole owner. See 2004 Examination of Daniel Taylor, pgs. 32-33, "Exhibit 1" attached to Cross Motion. Lula was very successful for a time. In 2004, the Debtor acquired a second Sign-A-Rama franchise which he operated through Dundee Corporation ("Dundee"), also an S-Corporation of which he was sole owner. The Debtor testified that the seller of the second franchise operation had "cooked the books," Id. at 50, and that he had been defrauded in that acquisition, Id. The Debtor's consolidated business operations through Lula and Dundee began to fail soon after he began operating the second Sign-A-Rama store. Id. at 45-46.

The Debtor shut down Dundee in September of 2005. Statement of Financial Affairs, [DE 1] in the main bankruptcy case. The Debtor is a guarantor of many of that company's outstanding debts. See Affidavit of Soneet R. Kapila, ¶14, "Exhibit E" attached to Motion.

As a result of losses at Dundee, the Debtor suffered a net operating loss ("NOL") of $58,612 in 2005. See Debtor's 2005 Tax Return, "Exhibit A" attached to Motion. In an attachment to his 2005 tax return, filed on July 24, 2006, Debtor elected under 26 U.S.C. § 172(b)(3) to forego carrying back the NOL in order to carry the entire NOL forward to future tax years. Id. at 7. It is this election which forms the entire nucleus of the parties' dispute.

---

[1]S-Corporations are not separate taxpayers. Rather, the tax effects of their operations pass directly through to their owner(s) and are included in the owners' individual tax returns.

The Debtor's accountant explained that the reason for electing the waiver was that the Debtor, "was thinking he was going to sell [the business] . . . for 100 to $150,000 . . . Certainly the income rate in the future . . .would be higher." Deposition of Daniel J. Cole, C.P.A., pgs. 13-14, "Exhibit 2" attached to Cross Motion. The accountant thought that this sale would occur in either 2006 or 2007 and the Debtor would thus have income so as to utilize the NOL carryback in the future. Id. The result of this waiver under tax law is that the Trustee was unable to amend the Debtor's 2003, 2004, and 2005 returns to claim the refunds that would be payable to the bankruptcy estate if the Debtor had not waived the NOL carryback. See Affidavit of Soneet R. Kapila, ¶7, "Exhibit E" attached to Motion.

The Debtor entered into a sales agreement with Michael Vitetta on July 16, 2006, for the sale of Lula's assets. See Affidavit of Soneet R. Kapila, ¶3, "Exhibit A" attached to Trustee's Response; Statement of Financial Affairs, [DE 1] in the main bankruptcy case. Pursuant to that agreement Mr. Vitetta was to pay $285,000 for the business with an initial deposit of $1,000 and a subsequent deposit of $19,000. Sales Agreement, ¶2, "Exhibit A-1" attached to Trustee's Response. That $19,000 was provided in the form of a check made payable to Debtor's wife, Donna Taylor. Statement of Financial Affairs, [DE 1] in the main bankruptcy case.

The Sales Agreement was supposed to close on July 24, 2006, the same date as the Debtor signed his 2005 tax return and elected his NOL waiver. Sales Agreement, ¶12, "Exhibit A-1" attached to Trustee's Response. The Sales Agreement never closed since the buyer decided not to buy the business.[2] 2004 Examination of Daniel Taylor, pgs. 43-45, "Exhibit 1" attached to Cross

---

[2] The Debtor alleges that Mr. Vitetta stole his business and is currently operating that store. 2004 Examination of Daniel Taylor, pp. 43-45. Prior to the closing date, the Debtor received notice that his landlord planned to evict Lula; Taylor contacted Mr. Vitetta and told him

Motion. Lula ceased doing business in September of 2006.

Approximately four months later, and six months after the waiver of the NOL carryback, the Debtor filed his voluntary bankruptcy petition on January 22, 2007.

According to his affidavit and in his capacity as trustee for the chapter 7 estate, the Trustee reviewed the financial records of the Debtor. *See* <u>Affidavit of Soneet R. Kapila</u>, ¶¶2&3, "Exhibit E" attached to Motion. The Trustee based his conclusions on his study of (a) the Form 1040s, with all schedules, for the debtor for the years 2003, 2004, 2005, and 2006; and (b) the Debtor's schedules and Statement of Financial Affairs from the main bankruptcy case. *Id.* at ¶3. The Trustee asserts that absent the waiver, the estate would have been able to apply the carryback for the 2003 tax year and would have received a $11,201 refund. *Id.* at ¶ 9. The Trustee contends that "based on the information that is available to the trustee and his professionals, it appears unlikely that the debtor, as of July 24, 2006, has existing sources that would generate sufficient income to produce a refund in 2007 or other future years using the debtor's NOL carryover from 2006." *Id.*

Lula's business was losing money at the time of the aborted sale. *See* <u>2004 Examination of Daniel Taylor</u>, pgs. 43-45, "Exhibit 1" attached to Cross Motion. The Sales Agreement had numerous contingencies, including specific financing contingencies (<u>Sales Agreement</u>, ¶2, "Exhibit A-1" attached to Trustee's Response); a requirement that the landlord assign the store lease to the buyer (*Id.* at ¶4); the absence of any judgments against Lula Corp. (*Id.* at ¶6); the absence of any

---

"if we don't close on the date we agreed upon in the contract, I am leaving." *Id.* (internal citations omitted). The Debtor alleges that the Sign-A-Rama franchisor convinced Mr. Vitetta that the Debtor was going out of business and that instead of buying the business that the corporate entity would "just put [Mr. Vitetta] in the same spot,"; they just gave him the business. *Id.* In addition, it is alleged by the Debtor that Mr. Vitetta cut a deal with the landlord so as to facilitate him taking over the space when the Debtor and his business were evicted. *Id.*

default under the Sign-A-Rama franchise agreement (*Id.*), and a due diligence period during which the buyer could back out of the Sales Agreement if unsatisfied with the business and buyer would be refunded all deposits. (*Id.* at ¶36). A $3,930 judgment against Lula Corporation entered in state court on February 7, 2006, which remains unsatisfied. <u>Final Default Judgment Against Defendant Lula Corp. d/b/a Sign A Rama of Davie</u>, "Exhibit B" attached to Trustee's Response. I am satisfied that although the Debtor may subjectively have believed that there was a reasonable prospect of selling Lula's assets under the Sales Agreement at the time he executed the waiver of the NOL carryback on July 24, 2006, the failure of each of the foregoing contingencies meant that there was on that date no reasonable objective prospect that the sale to Mr. Vitetta would close.[3]

I find that the Debtor was insolvent at the time of his election to waive the NOL carryback. *See* <u>Affidavit of Soneet R. Kapila</u>, ¶13, "Exhibit E" attached to Motion. As of the January 2007 petition date, the Debtor owed $115,985.82 of secured debt, $48,000 of unsecured priority claims, and $352,220.50 of general unsecured, undisputed, noncontingent, liquidated debt. *See* <u>Schedules D, E, and F</u>, [DE 1] in the main bankruptcy case. At a minimum, $346,884.99 of this debt was incurred before the Debtor elected on July 24, 2006, to waive the NOL carryback. *Id.*

As of the petition date, the Debtor owned $2,000 of exempt assets. <u>Schedule B</u>, [DE 1] in the main bankruptcy case. In addition, the Debtor had $259,120 of non-exempt assets, of which the vast majority, $250,000, was a crossclaim for declaratory judgment and damages against Clemencia Chaves and MCR Statewide Services Inc. <u>Schedule B</u>, [DE 1] in the main bankruptcy case. This claim arose from the transaction under which the Debtor's company Dundee purchased Ms. Chaves' Sign-A-Rama business. <u>2004 Examination of Daniel Taylor</u>, pp. 49-50, "Exhibit 1" attached to

---

[3]As folk wisdom has it, if wishes were horses, beggars would ride.

Cross Motion. The Debtor alleges that Ms. Chaves, in conspiracy with the Sign-A-Rama franchisor, had misrepresented the value of the business and "cooked the books" so as to fraudulently induce the Debtor into purchasing the business. *Id.* The Debtor also lists Clemencia Chaves as a undisputed creditor in the amount of $60,000. Schedule F, [DE 1] in the main bankruptcy case; *see also* <u>Affidavit of Soneet R. Kapila</u>, ¶11, "Exhibit E" attached to the Motion. Further, the Debtor's statement of financial affairs reflects that he had not disposed of any assets in the preceding year. Id. at ¶12

As of the petition date, the Debtor had been unemployed for the previous four months and was generating no monthly income, while his spouse was generating $2,068.38 a month in take-home income after payroll deductions. <u>Schedule I</u>, [DE 1] in the main bankruptcy case. At the time of filing the Debtor and his spouse were incurring $4,062.83 in average monthly expenses, resulting in a negative net monthly income of ($1,994.45). <u>Schedule J</u>, [DE 1] in the main bankruptcy case. The Debtor received from Lula Corporation income of $4,853 for 2004, a net loss of $110,988 for 2005, and income of $41,500.12 for 2006. <u>Statement of Financial Affairs</u>, [DE 1] in the main bankruptcy case.

## DISCUSSION

### 1. Legal standard for summary judgment

Under Rule 56 of the Federal Rules of Civil Procedure, incorporated into bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper if the pleadings, deposition, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the Court that there are no genuine issues of material fact that should be decided at trial. *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593-94 (11th Cir. 1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion and resolve all reasonable doubts in that party's favor. See also *Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.

The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 324.; *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense*

*Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[4] By its very terms the standard for summary judgment provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Id.* at 248.

### 2. Internal Revenue Code and NOL waivers

The Trustee is seeking in substance to reverse the Debtor's tax election waiving his NOL carryback as a fraudulent transfer under the Bankruptcy Code so as to permit the Trustee to apply that NOL to prior tax years, thereby generating a tax refund of some $11,000 in order to pay the Debtor's creditors. A taxpayer generates a net operating loss ("NOL") during a tax year if his deductible business expenses exceed his net income. 26 U.S.C. § 172(c). When this occurs, a taxpayer may apply the loss to the two preceding years to offset past tax liability and, if applicable, receive a refund. *See* 26 U.S.C. § 172(b)(1); *see also* 26 U.S.C. §6511(d)(2). Alternatively, a taxpayer may elect to irrevocably waive this option and instead carry forward the entire NOL to reduce future tax liabilities. *Id.* at § 172(b)(3). Once a taxpayer elects to waive the carryback, the election is irrevocable under the Internal Revenue Code. *Id.* It is undisputed that the Debtor elected to waive the carryback in his 2005 tax return, thus, making the waiver irrevocable under the Internal Revenue Code. Thus, as a matter of tax law, the Trustee cannot undo the Debtor's election.

It appears clear that the purpose for irrevocability in an NOL carryback waiver is to achieve

---

[4]Fifth Circuit Decisions entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

finality in the computation of tax obligations. A carryback waiver is a business decision – a bet – by the taxpayer that his personal tax rate in the future is likely to be higher than was his effective tax rate in the past. He is essentially betting that his income in the future, and, thus, in a progressive tax system, his tax bracket, will be higher than it was in the past, and that his NOL deduction will therefore be worth more to him in the future than if he used it now to claim a refund for past years. In this context, making the taxpayer's decision irrevocable makes sense: the Government lets the taxpayer bet on the level of his future income, but not to change his bet after the ponies have run around the track. Viewed purely as a matter of tax policy, the irrevocable nature of a taxpayer's NOL carryback waiver makes perfectly good sense.

**3. Waiver of NOL carryback and fraudulent transfer law**

Section 548 of the Bankruptcy Code provides a trustee with the ability to avoid transfers made by the debtor that intentionally or constructively defraud his creditors. This section provides in relevant part that:

> (a) (1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> >
> > (B) (I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> > > (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

11 U.S.C. § 548. At the January 30th hearing, the Trustee conceded that he would not go forward

on the intentional fraud component of a Section 548 avoidance action, instead he would rely solely on the constructive fraud provisions of Section 548(a)(1)(B) for the relief requested.[5]

Therefore, the Trustee must prove that the Debtor (a) within two years, (b) had interest in property, (c) transferred it, (d) and received less that reasonably equivalent value for that transfer, and (e) was insolvent on the date of that transfer. With regard to part (a), there is no dispute as to fact or law that the NOL waiver occurred well within two years of the filing of Debtor's bankruptcy case. A more in depth discussion is required as to the remaining four parts.

### (a) An NOL carryback is an interest in property

I must first consider whether an NOL carryback is an interest in property. Property is broadly defined by the Bankruptcy Code to include "all legal or equitable interests of the debtor." 11 U.S.C. § 541. The Supreme Court clearly held in *Segal v. Rochelle*, 382 U.S. 375 (1966), decided under the Bankruptcy Act of 1898, that tax attributes are property of a bankruptcy estate. Subsequent Court of Appeals decisions have confirmed the continuing vitality of *Segal* under the Bankruptcy Code. *See United States v. Sims (In re Feiler)*, 218 F.3d 948 (9th Cir. 2000); *see also Barowsky v. Serelson (In re Barowsky)*, 946 F.2d 1516, 1518-19 (10th Cir. 1991).

In *Segal*, the debtors incurred NOLs that gave rise to the right to a tax refund when carried back and applied to past tax years. Later in the same taxable year, the debtors filed for bankruptcy. *Segal*, 382 U.S. at 378. The Court held that the resulting loss carryback refund claim constituted "property" as of the time of the bankruptcy petitions, even though the petitions were filed in the

---

[5]In light of the Debtor's testimony that he subjectively believed that the sale of Lula's assets to Vitetta would close, notwithstanding the objective unlikelihood of such a transaction actually occurring, it would be difficult if not impossible for the Trustee to prevail on summary judgment on a § 548(a)(1)(A) count.

middle of the taxable year, and the debtors did not yet have a right to the tax refunds. The right to a tax refund was considered "property" and "transferable." *Id.* at 384-385.

Since the right to receive a tax refund constitutes an interest in property, an election to waive a tax carryback and to relinquish the right to a present refund in exchange for an interest in a later tax benefit does not change the character of the property so conveyed. Prior to the NOL carryback waiver, the Debtor had a property interest in his NOL carryback. What the Debtor here gave to the Government was his current property interest. The mere fact that the waiver of the present tax refund is irrevocable under the Internal Revenue Code does not transmute the Debtor's property interest into something other than "property."

Inherent in the Trustee's avoiding powers is the ability to recover the interest in property that the Debtor relinquished. The result under tax law of electing a NOL carryback waiver is irrelevant to this analysis. Under § 550(a) of the Bankruptcy Code, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property," from the transferee. What the Debtor transferred in July 2006, was property in the form of tax attributes. If the statutory requirements of §§ 548 and 550 of the Bankruptcy Code are satisfied, the Trustee here can recover either that "property," *i.e.,* the tax attributes themselves, such that the Trustee can use those attributes to claim a refund on a prior year's amended tax return for the Debtor, or "the value of such property," here, some $11,201 for the tax year 2003.

The Government argues that the operative language of section 1398(g) of the Internal Revenue Code would preclude the estate from the residual interest in a tax attribute post-waiver. *See* the Cross Motion *at* 17-18. The relevant part of section 1398(g) states:

(g) Estate succeeds to tax attributes of debtor. The estate shall succeed to and take

> into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor--
>
>> (1) Net operating loss carryovers. The net operating loss carryovers determined under section 172...

26 U.S.C. 1398(g). I quite agree that the Trustee for the Debtor's estate succeeds to the Debtor's tax attributes. But there is nothing inconsistent with succeeding to the Debtor's tax attributes, on the one hand, and recovering (under the fraudulent transfer provisions of §§ 548 and 550) property transferred by the Debtor and for which the Debtor did not receive reasonably equivalent value.

Therefore, as a matter of law the pre-transfer NOL carryback tax attribute is an interest in property held by the Debtor.

### (b) An NOL waiver constitutes a "transfer" within the meaning of the Bankruptcy Code

The United States asserts that even if the Debtor had a proprietary interest in the NOL carryback, the waiver and carrying forward of that interest does not constitute a transfer of property. I disagree. The NOL carryback waiver represents the transfer of one tax attribute for another – the Debtor traded the right to a present refund to the IRS in exchange for the right to deduct the NOL amount from income on future tax returns. *See Sims*, 218 F.3d at 956. This conclusion is supported by the statutory language of the Bankruptcy Code, which defines the term "transfer" as:

> ...
> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with –
>
>> (I) property; or
>> (ii) an interest in property

11 U.S.C. § 101(54). As explained above, the Debtor unquestionably had an interest in property and transferred that property right for subsequent rights under the Internal Revenue Code.

Before the Debtor made the election to waive his NOL carryback, the IRS would have been obligated at a minimum to issue a tax refund of approximately $11,201 for the 2003 tax year if the Debtor had filed an amended return for that year. By executing the waiver, the Debtor traded his right to a present refund for the right to carry the NOL forward, and as a result, the IRS was no longer required to pay what would be otherwise due under the NOL carryback. The Debtor's waiver operated as a matter of law as a transfer of property to the United States.

**(c) The Debtor received less than reasonably equivalent value for that transfer**

Bankruptcy courts are courts of equity. See *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 208 (1988); *U.S. v. Sanford (In re Sanford)*, 979 F.2d 1511, 1513-14 (11th Cir. 1992). Accordingly, "bankruptcy courts 'will look through the form to the substance of any particular transaction and may contrive new remedies where those in law are inadequate. . . .'" *Global W. Dev. Corp. v. Northern Orange County Credit Serv., Inc. (In re Global W. Dev. Corp.)*, 759 F.2d 724, 727 (9th Cir. 1985)(*citing Ohio v. Collins (In re Madeline Marie Nursing Homes)*, 694 F.2d 433, 436 (6th Cir. 1982); *quoting* 1 Collier on Bankruptcy, para. 2.09 at 173-175 (14th ed. 1974). The fraudulent transfer doctrine prohibits the transfer of a debtor's property with either the intent or effect of placing the property beyond the reach of its creditors. *Sims*, 218 B.R. at 962. The underlying purpose of § 548 is to preserve assets of the estate for creditors. *Id.* at 962; *In re United Energy Corp.*, 944 F.2d 589, 597 (9th Cir. 1991). Whether a transfer is made for reasonably equivalent value is largely a question of fact to be determined in light of the facts presented in each particular case. *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir. 1990) *(citing Mayo v. Pioneer Bank & Trust Co.*, 270 F.2d 823, 829-30 (5th Cir. 1959), cert. denied, 362 U.S. 962 (1960)); *see also In re Ozark Restaurant Equipment Co., Inc.*, 850 F.2d 342, 344 (8th

Cir. 1988).

When determining if a given exchange is for reasonably equivalent value, I am required to look to the time of that transfer and not beyond that point. *In re Morris Communications NC, Inc.*, 914 F.2d 548, 466 (4th Cir. 1990). Subsequent increase or decrease in the value of the consideration does not affect this evaluation. *Id.* By its terms and application, the concept of "reasonably equivalent value" does not demand a precise dollar-for-dollar exchange. *Advanced Telecommunication Network, Inc. v. Allen (In re Advanced Telecommunication Network, Inc.)*, 490 F.3d 1325, 1336 (11th Cir. 2007) (internal citations omitted). The benefit received need not be entirely "direct"; a transaction can have indirect benefits. *Schaps v. Just Enough Corporation (In re Pinto Trucking Service, Inc.)*, 93 B.R. 379, 389-90 (Bankr. E.D. Penn. 1988) (finding reasonable value where a company transferred $500,000 to fighting shareholders and forgave shareholder loans totaling $600,000).

If the NOL waiver here were not avoidable, the effect would be to permit the Debtor to carry forward an asset that will be immune from paying down his prepetition creditors. This is fundamentally counter to the statutory purpose of the trustee's avoidance power, and indeed, of the fundamental principle that a party entering bankruptcy makes all of his non-exempt property available to satisfy his debts. Indeed, to permit the Debtor to convert his prepetition property interest in a tax refund into a future tax attribute which is free of the claims of his prepetition creditors is nothing more than money laundering through the kind auspices of the United States. Such a result is clearly contrary to the public policy underlying the Bankruptcy Code.

On the undisputed facts of this case, the Debtor did not receive reasonable equivalent value for his NOL carryback when he traded it in July 2006 for a future contingent tax benefit. The

Trustee has established that the Debtor had no reasonable prospect of increased income in his then-current or future tax years. The Debtor was insolvent on July 24, 2006, and he had no reasonable prospect that his Sign-A-Rama business operated through Lula could either operate successfully or be sold. His apparent subjective belief to the contrary, was no more than wishful thinking. I accordingly find on the facts of this case that the Debtor received less than the then-current value of his NOL carryback when he transferred that property interest to the United States in exchange for future contingent tax attributes, the value of which – while unquestionably speculative – was equally unquestionably less than the value of the NOL carryback transferred.[6]

There is no evidence in the record to support the proposition that Debtor's financial outlook was anything but grim. As he himself testified, his company was facing financial difficulty and he needed the cash from the sale of his business so as to relieve himself of his debt burden. The Trustee has demonstrated that at the time of the Sales Agreement there was no objective reasonable chance for that sale to actually close. The Sales Agreement was never going to close at the time of the NOL waiver or at any time in the future. Whether there is any validity to the Debtor's apparent belief that his buyer, his franchisor, and his landlord were in conspiracy against him, or whether they were merely in communication about the Debtor's dying business, is irrelevant. Lula's business was dead and was completely abandoned soon after the NOL carryback waiver was signed. The facts as they played out in the weeks after the NOL carryback waiver was signed underscores both the absence of value in the Debtor's business and the lack of reasonably equivalent value obtained by the Debtor when he exchanged current tax attributes for future tax attributes.

---

[6] It is difficult to imagine how a debtor who is clearly insolvent and on the cusp of a bankruptcy filing could ever receive reasonably equivalent value when he gives up his NOL carryback in exchange for future contingent tax attributes.

### (d) Insolvency on the date of the NOL waiver

The Bankruptcy Code defines the term "insolvent" in relevant part:

(A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of–

    (I) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

    (ii) property that may be exempted from property of the estate under section 522 of this title.

11 U.S.C. § 101(32)(A). The Trustee has established that the Debtor's debts at the time of the NOL waiver were greater then his assets. I need not undertake further analysis.

The Trustee in his duty as trustee concluded that the Debtor was insolvent at the time of the NOL waiver. The record before the Court supports that conclusion. The Debtor had at least $352,220.50 of debt at the time of the NOL transfer. He did not dispose of any assets in the preceding year to his filing the main bankruptcy case. Thus, the value of his non-exempt assets at the time of the NOL waiver were at best $259,120. This leaves close to a $100,000 difference between his liabilities and assets.

The Debtor's income for 2006 was $41,500; in 2005 he had a net loss of over $100,000. In addition, he received a $19,000 payment on the Sales Agreement that went to his wife. The Sales Agreement, as explained above, had no real value as it did not close, was full of untenable contingencies in favor of the buyer, and was facially unenforceable based on the judgment entered against Lula prior to the closing date. Lula had minor value, if any. The prospective buyer was able to acquire his own franchise from the Sign-A-Rama franchisor without regard to the Debtor's interest in his franchise. The Debtor was forced to vacate Lula's store location and abandon the business.

Mr. Vitetta now owns and operates an identical business in that very same location. The Trustee has met his burden of establishing that there is no issue of material fact and that the Debtor's debts were greater than all of his property at a fair valuation.

The Government does not raise any relevant issues as to the insolvency analysis of the Debtor's financial state on July 24, 2006. Instead, the United States relies upon case law – inapplicable here – which stands for the proposition that proof of insolvency on a date specific, absent further evidence, does not prove insolvency six months earlier. However, as discussed above, the Trustee has met his burden and has established that the Debtor was insolvent on July 24, 2006.Accordingly, there is no issue of fact or law as to the Debtor's insolvency at the time of the NOL waiver.

### Conclusion

If I were to conclude that the Trustee cannot recover the property interest transferred by the Debtor when he executed the NOL carryback waiver, the effect would be that the Debtor would receive a windfall property interest at the expense of his creditors. As a matter of public policy as expressed in the Bankruptcy Code, such a result on these facts would be deeply offensive.

I appreciate that the bankruptcy policy at issue here conflicts with the tax policy of finality with respect to NOL carryback elections. As noted above, that tax policy makes good sense when viewed in its own context. It is often the case that disparate federal policies conflict on the margins, thereby giving judges food for thought and pundits fuel for op-ed columns. Reconciling these conflicting policies here seems straightforward to me. The sound tax policy for irrevocability under the Tax Code is not offended or harmed by the avoidance of the NOL carryback waiver under bankruptcy law. As stated above, the theory behind the irrevocable nature of a NOL carryback

waiver is to prevent individuals from pushing in all their chips and then requesting them back when the dealer hits twenty one. There is a fundamental difference between that scenario and the situation presented here, in which a chapter 7 trustee petitions the court to recover a tax attribute for the benefit of the bankruptcy estate. Under this very limited situation, and only after judicial review, will the bankruptcy law permit the trustee as the fiduciary for the bankruptcy estate to recover those tax attributes which existed prepetition for the benefit of the prepetition creditors. Allowing the Trustee to recover as fraudulent the Debtor's transfer of his NOL carryback prevents the gross inequity created by the irrevocability of the NOL carryback waiver.

The Trustee has established that there is no issue of material fact as to the five elements required under 11 U.S.C. § 548(a)(1)(B) to permit the trustee to avoid a transfer for constructive fraud. Thus, as a matter of law the Trustee is entitled to summary judgment as to all issues. Based on the forgoing, it is hereby **ORDERED** that:

1. The Trustee's Motion for Summary Judgment [DE 16] is **GRANTED**.

2. Pursuant to 11 U.S.C. § 548(a)(1)(B), the Debtor's election on July 24, 2006, to waive his NOL carryback and carry that tax attribute forward is **AVOIDED** and **RECOVERED** from the United States of America pursuant to 11 U.S.C. § 550(a)(1). The Trustee may apply the prepetition NOL carryback to pre-petition tax returns of the Debtor, or may by separate motion in this adversary proceeding seek to recover judgment for the value of such prepetition NOL carryback.

3. The Defendant's Cross Motion for Summary Judgment [DE 23] is **DENIED**.

# # #

Copies furnished to:

Patrick S Scott, Esq
111 S.E 12 St # B
Ft. Lauderdale, FL 33316

David B Zisserson
POB 14198
Washington, DC 20044

Mr. Scott is directed to serve a conformed copy of this order on all interested parties not listed above.